# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 14-CIV-60815-BLOOM/Valle

CAPITOL SPECIALTY INSURANCE
CORPORATION, a foreign corporation,

      Plaintiff,

v.

ROYAL CRANE, LLC, ALL FLORIDA TREE
& LANDSCAPE, INC. and RAE FRANKS as
Personal Representative of the Estate of JORGE
CARRERA ZARATE,

      Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon Plaintiff Capitol Specialty Insurance

Company's ("Plaintiff" or "Capitol") Motion for Summary Judgment, ECF No. [39] (Capitol's

"Motion"), and Defendant Royal Crane, LLC's ("Royal Crane") Cross-Motion for Summary

Judgment, ECF No. [41] (Royal Crane's "Motion").  The Court has reviewed the Motions, all

supporting and opposing filings and submissions, and the record in the case.  For the reasons that

follow, Royal Crane's Motion is **DENIED**, and Capitol's Motion is **GRANTED**.

## I. MATERIAL FACTS

Capitol initiated these proceedings by filing its Complaint, ECF No. [1], against Royal

Crane and Defendants All Florida Tree & Landscape, Inc. ("All Florida Tree") and Rae Franks,

as Personal Representative of the Estate of Jorge Carrera Zarate (the "Zarate Estate").  Capitol

seeks relief under Fla. Stat. Ch. 86 as to an insurance policy it issued to All Florida Tree

declaring that it has neither a duty to defend nor indemnify any party with respect to a wrongful

death action brought by the Zarate Estate against Royal Crane in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (the "Circuit Court") captioned *Rae Franks, as Personal Representative of the Estate of Jorge Carrera Zarate v. Royal Crane, LLC*, Case No. 13-022197 (the "Underlying Action").[1]  *Id*.

In August, 2012, All Florida Tree was retained by a general contractor to remove a kapok tree at a residential job site in Broward County, Florida.  ECF No. [40] (Pl. Stat. Facts) ¶ 1; ECF No. [42] (Def. Stat. Facts) ¶ 2; ECF No. [31-1] (Am. Compl. in Underlying Action) ¶¶ 16-17). The project was permitted under a licensed general contractor by the City of Fort Lauderdale, Permit No. 12070390.  Pl. Stat. Facts ¶ 2; *see* ECF No. [38-1] (City of Ft. Lauderdale Permit). At that time, All Florida Tree contracted with Royal Crane for lease of a crane to be used in the course of the tree removal project.  Pl. Stat. Facts ¶ 3; Def. Stat. Facts ¶ 4; Am. Compl. in Underlying Action ¶¶ 18-21; ECF No. [1-3] (Third Party Compl. in Underlying Action) ¶ 12. All Florida Tree had performed similar tree removals in the past and frequently hired Royal Crane to provide the necessary machinery.  Def. Stat. Facts ¶ 3.

In connection with the tree removal project, on or about August 21, 2012, All Florida Tree and Royal Crane entered into an Equipment Service Agreement.  ECF No. [1-4] (Equipment Service Agreement).  Those parties regularly entered into equipment service agreements in connection with similar projects.  Def. Stat. Facts ¶ 6.  The Equipment Service Agreement included an indemnification provision, under which, in relevant part, All Florida Tree agreed to indemnify Royal Crane from claims for death or personal injury arising from All Florida Tree's work.  Equipment Service Agreement at p. 2 § 1.

---

[1] Jurisdiction is proper as Capitol is completely diverse from all Defendants and the action involves more than the statutory requirement.  *See* 28 U.S.C. § 1332.

Jorge Carrera Zarate ("Zarate") was employed by All Florida Tree as a tree trimmer. Pl. Stat. Facts ¶¶ 4-5; Def. Stat. Facts ¶ 8. In the course of performing the tree removal work on August 21, 2012, Zarate suffered fatal injuries when a sling on the crane owned and operated by Royal Crane made contact with an energized power line. Pl. Stat. Facts ¶ 9; Def. Stat. Facts ¶ 9; Am. Compl. in Underlying Action ¶¶ 28, 31.

At the time of his death, Zarate was the statutory and putative employee of All Florida Tree. Pl. Stat. Facts ¶ 5; Def. Stat. Facts ¶ 8. Federal withholdings, social security withholdings, Medicare withholdings, and workers' compensation withholdings were all deducted from the paychecks issued to Zarate by All Florida Tree. ECF No. [38-2] (Zarate Employee Pay Records). Zarate signed and completed an Employment Eligibility Application, Form I-9, as a part of his employment application with All Florida Tree. ECF No. [38-6] (Zarate Form I-9). All Florida Tree issued protective equipment and a company shirt to Zarate for mandatory use during working hours. *See* ECF No. [38-4] (Safety Equipment Form); ECF No. [38-5] (Zarate Estate Ans. to Interrog., No. 1 (December 5, 2014)). Zarate was identified as an employee of All Florida Tree on the workers' compensation injury report for this incident filed with the Florida Department of Financial Services, Division of Workers Compensation. ECF No. [38-3] (First Report of Injury or Illness).

After Zarate's death, the Zarate Estate obtained workers' compensation benefits under a policy issued to Zarate's employer, All Florida Tree. Pl. Stat. Facts ¶ 11. As of November 15, 2014, Ascendant Claims Services has asserted a lien for payments made to or on behalf of the Zarate Estate in the amount of $167,893.51. Zarate Estate Ans. to Interrog., No. 2.

On October 2, 2013, the Zarate Estate filed a wrongful death action against Royal Crane (the Underlying Action). *See* ECF No. [1-2] (Initial Compl. in Underlying Action). Royal Crane

then sued All Florida Tree.  Third Party Compl. in Underlying Action ¶¶ 3-7.  The Third Party

Complaint asserts three claims, for common law (Count I) and contractual (Count II)

indemnification (the latter in respect of the Equipment Service Agreement), and breach of

contract (Count III, also with respect to the Equipment Service Agreement) alleging that Zarate's

damages resulted from All Florida Tree's failure to provide competent and qualified personnel to

direct the operations of the equipment and conduct such operations on the tree removal project

in accordance with applicable standards.  *Id*. ¶¶ 10, 12, 14, 16.  The Zarate Estate later amended

its complaint to assert a claim against All Florida Tree for violation of Fla. Stat. § 440.11(1)(b),

as well as a culpable negligence claim against All Florida Tree's owner, Alan McPherson.  Am.

Compl. in Underlying Action ¶¶ 98-115.  The Section 440.11 count alleges that All Florida Tree

breached its duty to "provide a reasonably safe working environment," and to "ensure that its

jobsites were free from recognized hazards that were causing or were likely to cause death or

serious physical harm" by intentionally subjecting Zarate to a "known inherently dangerous

condition which was substantially and virtually certain to result in serious death or injury."  *Id*.

¶¶ 100-104.

Capitol issued a commercial general liability policy to All Florida Tree, which was

effective on August 21, 2012.  *See* ECF No. [1-5] (Policy).  All Florida Tree is a named insured

under the Policy.  *Id*.  The Policy contains an endorsement, titled "Third-Party-Over Action

Exclusion," which provides as follows:

> A. Exclusion e. under Paragraph 2., Exclusions of Section I – Coverage A –
> Bodily Injury and Property Damage Liability is replaced by the following:
>
>> 2.  Exclusions
>>
>> This insurance does not apply to:
>>
>> e.  Employer's Liability
>>
>> Bodily injury, personal injury, or advertising injury to:

4

> (1) An employee of any insured arising out of and in the course of employment,
>
> (2) The spouse, child, parent, brother or sister of that employee as a. consequence of (1) above.

This exclusion applies:

> (1) Whether an insured may be liable as an employer or in any other capacity;
>
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and
>
> (3) To any insured against whom a claim is made or suit is brought for such bodily injury, personal injury or advertising injury, whether by or on behalf of an employee of that insured or any other insured.

> For the purpose of this exclusion the term "employee" includes loaned, rented, leased or temporary employees, as well as persons who qualify as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employee, respondent superior or any similar doctrine, or for whom any insured may be held liable as an employer:

Policy at p. 54.

The Policy also contains a "Contractual Liability" exclusion, which provides, in relevant part, that "[t]his insurance does not apply to . . . '[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Policy at p. 24, § I.2.b. The contractual liability exclusion, however, "does not apply to liability for damages . . . assumed in a contract or agreement that is an 'insured contract,'" which includes any part of a "contract or agreement pertaining to [the insured's] business . . . under which [the insured] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization" caused by the insured. Policy at p. 24, § I.2.b; p. 22 Amendment of Insured Contract Definition ¶ 9.f.

All Florida Tree tendered the claim in the Underlying Action to Capitol for defense, and Capitol has defended All Florida Tree in the Underlying Action while pursuing this declaratory action. All Florida Tree did not enter an appearance in this action, and has been defaulted. ECF

No. [19].  While the Zarate Estate has appeared in this action, it has not filed a response to either of the cross-motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations.  Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor.").

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."  *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)).  In particular, summary judgment is inappropriate where the Court

would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (noting a court must not weigh conflicting evidence nor make credibility determinations when ruling on a motion for summary judgment); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Gary v. Modena*, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Rule 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of*

*Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### III. ANALYSIS

Because the Policy excludes coverage for employer's liability, workers' compensation claims, and resulting third party indemnity claims, it does not cover liability asserted against All Florida Tree in the Underlying Action. As such, summary judgment for Capitol is appropriate.

**A.      Purpose of the Policy and Scope of Capitol's Duties to Defend and Indemnify**

The primary purpose of a commercial general liability insurance policy, such as the one Capitol issued to All Florida Tree here, is to protect businesses "from third-party liability incurred as a result of that company's business operations." *JB Recycling Group, Inc. v. Landmark American ins. Co.*, 2012 WL 3516490, at \*5 (S.D. Fla. Aug. 15, 2012) (citing *Colony Ins. Co. v. Montecito Renaissance, Inc.*, 2011 WL 4529948, \*1n.1 (M.D. Fla. Sep. 30, 2011) and *Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006)).

An insurer's duty to defend arises from the insurance contract and policy. *See Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1997) ("[I]f there is no contractual duty to defend in the parties' contract then there is no duty to defend."). That is, an insurer's duties toward its insured arise from the legal effects of the relevant policy provisions. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991). Therefore, summary judgment may be "appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)).

### B.      Construction of an Insurance Policy

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy."   *Pacific Employers Ins. Co. v. Wausau Business Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).  As with all contracts, the interpretation of an insurance contract – including determining whether an insurance provision is ambiguous – is a question of law to be determined by the Court.  *See Amer. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) ("Interpreting provisions in insurance contracts . . . involves questions of law."); *Travelers Indem. Ins. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st Dist.Ct.App.2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning."  *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *see also Tropabest Foods, Inc. v. State, Department of General Servs.*, 493 So. 2d 50, 51-52 (Fla. 1st DCA 1986) ("Words in an instrument should be given their natural or most commonly understood meaning.").   "[A]n insurance policy must be enforced in accordance with its unambiguous terms."  *Fireman's Fund Ins. Co. v. Levine & Partners, P.A.*, 848 So. 2d 1186, 1187 (Fla. 3d DCA 2003) (citing *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties."); *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998); *State Farm Fire and Cas. Co. v. Castillo*, 829 So. 2d 242 (Fla.

3d DCA 2002)).  However, ambiguities in insurance contracts are construed against the insurer and in favor of coverage.  *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) ("ambiguities construed against the insurer and in favor of coverage"); *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); ("Ambiguities are construed against the insurer and in favor of coverage."); *Siegle*, 819 So. 2d at 735 ("[I]t is only where courts first determine that policy language is ambiguous that contractual language is to be construed in favor of the insured.").

### C.    Scope of Liability Under the Policy

The employer liability exclusion in the Policy precludes coverage for liability asserted against All Florida Tree in the Underlying Action both by the Zarate Estate and by Royal Crane.

### 1.    The Contractual Liability Exclusion Does Not Preclude Coverage

Capitol argues that the contractual liability exclusion in the Policy precludes coverage, at least with respect to Count III of Royal Crane's Third Party Complaint against All Florida Tree in the Underlying Action.  It does not.

All Florida Tree agreed to indemnify Royal Crane under the Equipment Services Agreement.  The contractual liability provision in the Policy excludes coverage for liability for damages assumed by contract.  But, the exclusion, on its face, does not apply to "insured contracts:"  any part of a "contract or agreement pertaining to [the insured's] business . . . under which [the insured] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization" caused by the insured.  The Equipment Services Agreement is precisely such a contract.

Thus, coverage under the Policy with respect to Royal Crane's breach of contract claim is not precluded by the Policy's contractual liability exclusion.

## 2.        The Employer Liability Exclusion Precludes Coverage

Regardless, the Policy's employer liability exclusion precludes coverage for all claims asserted against All Florida Tree in the Underlying Action.

Florida courts regularly find employer liability exclusions like the one here to be valid and unambiguous.  *See*, *e.g.*, *Fla. Ins. Guar. Ass'n, Inc. v. Revoredo*, 698 So. 2d 890, 891 (Fla. 3d DCA 1997) (general employee exclusion and workers' compensation exclusion overlapped and were both valid, unambiguous and enforceable to preclude coverage); *Greathead v. Asplundh Tree Expert Co.*, 473 So. 2d 1380, 1383 (Fla. 1st DCA 1985) (same); *Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678-79 (Fla. 4th DCA 2009) (exclusion precluded coverage for negligence-based injuries alleged in employees' tort suits against their employer); *see also Nautilus Ins. Co. v. S & S Indus. Servs., Inc.*, 2007 WL 951776, at *6 (S.D. Fla. Mar. 28, 2007) (enforcing employee exclusion, which amended and replaced previous policy provision, as unambiguous); *Amerisure Ins. Co. v. Orange & Blue Const., Inc.*, 913 F. Supp. 2d 1363, 1373 (S.D. Fla. 2012) (enforcing employee exclusion to preclude coverage).  As once noted by the Supreme Court of Florida, "[t]he obvious intent and meaning of [business employee] exclusion clauses is to relieve the insuror of responsibility for liability incurred by the insured because of work connected injuries to his business . . . employees."  *Griffin v. Speidel*, 179 So. 2d 569, 571 (Fla. 1965).  The Second DCA explained the logic of employer, cross-employee and worker's compensation exclusions, as follows:

> An employer is required to protect its employees pursuant to the Workers' Compensation Statute, Chapter 440, Florida Statutes.  The employer then protects the general public by purchasing a liability insurance policy.  Because employees are already protected by workers' compensation, the insurance policy bought to protect the general public generally specifically excludes coverage for injuries covered by workers' compensation. The insurance policy premium would necessarily be higher were this not so.

*Aetna Fire Underwriters Ins. Co. v. Williams*, 422 So. 2d 7, 9 (Fla. 2d DCA 1982).

The Policy explicitly excludes coverage for employer's liability in the Third-Party-Over Action Exclusion endorsement.  This exclusion precludes coverage for "bodily injury" to an "employee of any insured arising out of and in the course of employment."  It applies to claims against the insured, "[w]hether an insured may be liable as an employer or in any other capacity" and to "any insured against whom a claim is made or suit is brought for such bodily injury, personal injury or advertising injury, whether by or on behalf of an employee of that insured or any other insured."  The exclusion further precludes coverage for third-party indemnity claims, specifically excluding "any obligation to share damages with or repay someone else who must pay damages because of the injury."  Finally, the exclusion contains a broad definition of "employee."

Both Capitol and Royal Crane agree that Zarate was an employee of All Florida Tree on the date of his accident and death.  Documentary evidence of Zarate's employment confirms that there is no dispute as to that issue.

The Zarate Estate's section 440.11 claim clearly falls within the scope of the exclusion. That claim alleges that All Florida Tree breached its duty to Zarate to "provide a reasonably safe and secure working environment, to ensure that its jobsites were free from recognized hazards that were causing or were likely to cause death of serious physical harm" by "deliberately expos[ing]" Zarate to "ultra-hazardous work conditions."  That is, tracking the language in the exclusion, the Zarate Estate seeks coverage for bodily injury to All Florida Tree's employee arising out of and in the course of his employment.  The exclusion would equally apply whether liability was asserted against All Florida Tree "as an employer or in any other capacity."

Royal Crane's indemnity claims are also plainly excluded from coverage.  They too assert liability on the basis of bodily injury to the insured's employee arising out of and in the

course of his employment.  Further, the exclusion specifically precludes coverage for third-party indemnity claims, including those sounding in contract.

While perhaps by less direct a route, Royal Crane's breach of contract claim also unambiguously falls within the ambit of the Policy's employer exclusion.  Royal Crane's contractual damages are derivative of its tort liability to the Zarate Estate.  That is, its breach of contract claim is, in effect, one for bodily injury to All Florida Tree's employee incurred in the course of his employment.  The employer's liability exclusion applies "[w]hether an insured may be liable as an employer *or in any other capacity*" (emphasis added).  That is, it equally applies where liability to the insured for bodily injury to the insured's employee is based on the insured's contractual obligation to indemnify (*i.e.*, in its capacity as a contracting party).  Further, the exclusion explicitly states that it applies to any form of indemnification obligation, including by contract.  Therefore, coverage for liability under Count III of Royal Crane's Third Party Complaint is precluded.

Royal Crane attempts to undermine the validity of the employer exclusion endorsement.  Strangely, it cites *Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London*, 696 So. 2d 376 (Fla. 1st DCA 1997), for the proposition that because the endorsement conflicts with other provisions of the Policy, the provisions which provide greater coverage prevail.  *Steuart* stands for the opposite proposition – "to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls."  *Steuart*, 696 So. 2d at 379 (further holding, in considering inconsistent endorsement loss provisions, that the endorsement with the greater coverage prevails); *see also Firemans' Fund*, 848 So. 2d at 1187 ("the terms of an endorsement such as the one sued upon control over anything purportedly to the contrary in any other insuring agreement"); *Swire Pac. Holdings Inc. v. Zurich Ins. Co.*, 284 F.3d 1228, 1234 (11th Cir. 2002)

(noting that, under Florida law, to the extent to which an endorsement is inconsistent with the body of the policy, the endorsement controls); *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1261 (S.D. Fla. 2013) ("An endorsement controls over general exclusionary language.").  Of course, ambiguities in an insurance policy are construed in favor of greater coverage.  *See U.S. Fire*, 979 So. 2d at 877; *Taurus*, 913 So. 2d at 532.  But no ambiguities exist here.  *Siegle*, 819 So. 2d at 735 ("[I]t is only where courts first determine that policy language is ambiguous that contractual language is to be construed in favor of the insured.").  The endorsement plainly modifies and amends the insurance contract, specifically as to its previous exclusion provisions.  *See* Policy at p. 54 (stating that "[t]his endorsement modifies insurance provided under" the commercial general liability form and that the exclusions section "is amended" as thereafter follows).  In any event, "[e]ven if there were an ambiguity between the endorsement and the body of the policy, the endorsement, which is clear, controls." *Family Care Ctr., P.A. v. Truck Ins. Exch.*, 875 So.2d 750, 752 (Fla. 4th DCA 2004).

### IV. CONCLUSION

The Policy does not extend coverage to All Florida Tree for the liability asserted against it by either the Zarate Estate or Royal Crane in the Underlying Action.  Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1.   Royal Crane's Motion for Summary Judgment, ECF No. [41], is **DENIED**.

2.   Capitol's Motion for Summary Judgment, ECF No. [39], is **GRANTED**.

3.   The Policy provides no coverage for all claims brought against All Florida Tree in the Underlying Action.

4.   The Clerk is directed to **CLOSE** this case.  Any pending motions are **DENIED as moot**.  Any impending deadlines are **TERMINATED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 26th day of February, 2015.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record